**CLD-241**                                                  **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3047
_____

YORDAN UNICO TURANGAN;
SELVIE TRIKORA TURANGAN,
Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A096-266-989 and A096-266-990)
Immigration Judge:  Eugene Pugliese
_____

Submitted on the Respondent's Motion for Summary Action
Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
July 26, 2012

Before:  RENDELL, HARDIMAN and COWEN, <u>Circuit</u> <u>Judges</u>

(Opinion filed:  August 17, 2012)
_____

OPINION OF THE COURT
_____

PER CURIAM

       Petitioners Yordan Unico Turangan and Selvie Turangan petition for review of an

order of the Board of Immigration Appeals ("BIA" or "Board") denying their motion to

reopen and reconsider.  The Turangans have filed their brief, while the Government has

filed a "Motion for Summary Affirmance" of the BIA's decision, which we interpret as a request for summary denial of the petition for review. The Turangans have filed a response to the motion. Construing the Government's motion as a motion for summary action under Third Circuit LAR 27.4 and I.O.P. 10.6, we will grant the motion and will deny the petition for review.

The Turangans, husband and wife, are natives and citizens of Indonesia. They entered the United States in 2002 and overstayed their visitors' visas. They conceded removability but applied for asylum, withholding of removal, and relief under the United Nations Convention Against Torture. Their claims were based on Yordan Turangan's allegations (as the lead respondent in the agency proceedings) of discrimination and acts of violence against him by Muslims on account of his Christianity. After a hearing, the Immigration Judge ("IJ") denied all forms of requested relief and ordered the Turangans to be removed to Indonesia. In 2008, the BIA affirmed the IJ's decision, agreeing that Yordan Turangan failed to establish that he was persecuted on account of a protected ground. The BIA also found that there was no evidence that he would be targeted for persecution if he returned to Indonesia, and that there was no pattern or practice of persecution of similarly situated individuals. The Turangans filed a petition for review from that decision. In January 2009, this Court dismissed the matter for lack of jurisdiction, noting that the petition for review was untimely (C.A. No. 08-4654).

In October 2010, the Turangans filed with the Board an untimely motion to reopen and reconsider the removal proceedings, alleging changed country conditions concerning

2

violence against Christians in Indonesia, and alleging that prior counsel was ineffective. The Turangans also argued that Christians are part of a "disfavored group" in Indonesia, and that recent Ninth Circuit and other precedent concerning Christians in Indonesia as a "disfavored group" justified reopening of the case. On June 30, 2011, the BIA denied the motion, noting that, to the extent that the Turangans sought reopening on the basis of case law from outside of this Circuit, this Circuit has not adopted the analysis set forth in those cases. The BIA also stated that the media articles and State Department reports submitted in support of the motion did not establish changed country conditions in Indonesia to meet the standard for reopening under 8 C.F.R. § 1003.2(c). Further, the BIA considered and rejected the Turangans' claim of ineffective assistance of counsel.

This petition for review followed. We have jurisdiction under 8 U.S.C. § 1252 to review the BIA's denial of the motion to reconsider and to reopen, and we apply the abuse of discretion standard to our review. See Borges v. Gonzales, 402 F.3d 398, 404 (3d Cir. 2005). Under that standard, the BIA's decision may be reversed only if it is "arbitrary, irrational, or contrary to law." Id. (citing Guo v. Ashcroft, 386 F.3d 556, 562 (3d Cir. 2004)). A motion to reconsider must be filed within thirty days of the Board's decision and must specify the errors of fact or law at issue in the prior BIA decision and must be supported by pertinent authority. See 8 C.F.R. § 1003.2(b)(1), (2). A motion to reopen must normally be filed within ninety days of a final order, but an exception to the time limitation exists if the motion is based on a change in conditions in the country to

3

which the movant has been ordered removed, and is supported by material evidence not available at the prior hearing.  See 8 C.F.R. § 1003.2(c)(2) & (c)(3)(ii).

Here, there is no dispute that the October 2010 motion to reopen and reconsider was filed beyond the applicable time frames from the BIA's 2008 decision.  To the extent that the BIA's decision to deny reconsideration was based on untimeliness, we cannot conclude that it constituted an abuse of discretion.  See Pllumi v. Att'y Gen., 642 F.3d 155, 160 (3d Cir. 2011) (applicable statute and regulation for motions to reconsider contain no exception to the filing deadline).  In denying the motion, the BIA discussed the Turangans' arguments that relief was warranted under the application of the "disfavored group" analysis, and in light of changed conditions in Indonesia concerning the mistreatment of Christians.[1]  We will consider the arguments in turn.

As in their motion to reopen, the Turangans' arguments to this Court rely heavily on the Ninth Circuit's jurisprudence in Wakkary v. Holder, 558 F.3d 1049 (9th Cir. 2009), and Tampubolon v. Holder, 610 F.3d 1056 (9th Cir. 2010).  Both cases involved Christian Indonesian petitioners and reinforced precedent in Sael v. Ashcroft, 386 F.3d 922, 927 (9th Cir. 2004), holding that ethnic Chinese are disfavored in Indonesia.  In Wakkary, the Ninth Circuit applied the "disfavored group" analysis to applications for withholding of removal and suggested that Chinese Christians are disfavored in Indonesia.  In Tampubolon, the Ninth Circuit held that all Christians, including those who

---

[1] The Turangans do not pursue their ineffective assistance of counsel argument before us, either in their brief or in their response to the motion for summary action.  Because the

are not Chinese, are a disfavored group. Here, the Turangans assert that the more widespread the threat to a disfavored group, the less individualized the threat of persecution has to be; individuals could show a comparatively low level of individualized persecution and remain eligible for asylum and withholding of removal. See Sael, 386 F.3d at 925-27. The Turangans thus argue that we should consider the decisions in Wakkary and Tampubolon and the Ninth Circuit's "disfavored group" analysis in reviewing the Board's denial of their motion to reconsider and reopen.

In view of controlling precedent in this Circuit, the Board did not abuse its discretion in declining to apply Wakkary and Tampubolon. We have rejected the "disfavored group" approach as applied to Chinese Christians in Indonesia, stating that, concerning Sael, we "disagree with the Ninth Circuit's use of a lower standard for individualized fear absent a 'pattern or practice' of persecution." See Lie v. Ashcroft, 396 F.3d 530, 538 n.4 (3d Cir. 2005). We later declined to revisit that issue. See Wong v. Att'y Gen. of U.S., 539 F.3d 225, 235 n.5 (3d Cir. 2008). Although Wakkary and Tampubolon arguably extend and build upon Sael, our prior rejection of the "disfavored group" approach and corresponding lower standard for individualized fear absent a pattern or practice of persecution is broad enough to encompass these recent decisions. Moreover, with respect to the holding in Tampubolon, we note that both Lie, 396 F.3d at 537, and Wong, 539 F.3d at 233, addressed anti-Christian violence in Indonesia as well as harassment of the Chinese minority.

argument is not before us, we will not discuss it further.

The Turangans also rely on the 2010 International Religious Freedom Report for Indonesia to support their argument that reopening was warranted for a change in country conditions. They assert that this report shows that violence against Christians in Indonesia is worsening. However, the administrative record confirms that they did not submit this 2010 report to the BIA for consideration. The Turangans request in their brief that we take judicial notice of the report, noting that it was published on November 17, 2010, which post-dated their motion to reconsider and reopen. Because the report is not part of the record of agency proceedings, this Court cannot consider it. See 8 U.S.C. § 1252(b)(4)(A); Berishaj v. Ashcroft, 378 F.3d 314, 331 (3d Cir. 2004).[2] The Turangans do not present any argument that they otherwise had established that the BIA should have granted relief on their motion on the basis of changed country conditions.

---

[2] We are mindful of our recent decision in Nbaye v. Attorney General, 665 F.3d 57 (3d Cir. 2011), in which we discussed the statutory mandate to decide a petition for review only on the materials in the administrative record while noting the practice of other courts of taking judicial notice of changes in political situations in the country of removal. In Nbaye, the petitioner's persecution claim was based on membership in a certain political party then in the opposition in the country of removal, but while the petition for review was pending, the parties confirmed that the petitioner's political party had come into power. In that case, we remanded the matter to the BIA for consideration of the change in political control. See id., 665 F.3d at 59-60. Here, the Turangans do not rely on Nbaye, and even under Nbaye, we still cannot decide a petition for review on the extra-record evidence. See id. at 60. In any event, we do not view the Turangans' proffer of the 2010 International Religious Freedom Report to be in the same category of extra-record evidence as the undisputed fact of the change in political control in Nbaye, and we conclude that a remand to the BIA is not appropriate here.

Because this petition for review does not raise a substantial question, we grant the Government's motion for summary action and will deny the petition for review.  See Third Circuit LAR 27.4 and I.O.P. 10.6.